UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>NOT FOR PUBLICATION</u>

J & J Sports Productions, Inc.,

Plaintiff,

– against –

Marcelino Enriquez, individually and d/b/a
Tu Ranchito Restaurant; and Tu Ranchito
Restaurant Corp., an unknown
business entity d/b/a Tu Ranchito Restaurant,

Defendants.

<u>MEMORANDUM & ORDER</u>

1:19-cv-2384 (ERK)

KORMAN, *J.*:

Plaintiff J & J Sports Productions, Inc. ("J & J") commenced this action against defendants

Tu Ranchito Restaurant Corp. ("Ranchito") and Marcelino Enriquez on April 24, 2019, alleging

that the defendants intercepted a telecast of the boxing event "Saul Alvarez v Liam Smith, WBO

World Super Welterweight Championship Fight Program" (the "Program") and exhibited it at their

restaurant in violation of the Federal Communications Act of 1934 ("FCA"), codified as amended,

47 U.S.C. §§ 553 and 605. Compl. ¶¶ 14, 19, 30, 35, 42, ECF No. 1. Ranchito is alleged to be a

"Domestic Business Corporation organized and existing under the laws of the State of New York"

that "owned and operated the commercial establishment doing business as Tu Ranchito Restaurant

operating at 635 Bay Street Staten Island NY 10304." *Id.* ¶¶ 7, 9. Enriquez is alleged to have been

the "Principal" of Ranchito. *Id.* ¶¶ 9, 10, 13.

J & J's service of process on Ranchito was valid under Fed R. Civ. P. 4(e)(1), because it

complied with New York Business Corporation Law § 306(b)(1). Aff. of Service, ECF No. 5. J &

J's service of process on Enriquez was likewise valid, because it complied with N.Y. C.P.L.R. §

308(4). Aff. of Service, ECF No. 6. Specifically, the process server did his due diligence by visiting Enriquez's dwelling as "[c]onfirm[ed]" by "Records of the New York State Dept. of Motor Vehicles" on three nonconsecutive days—a Monday afternoon, Saturday morning, and Monday evening—before resorting to the "nail and mail" method of service. *Id.*; *see JPMorgan Chase Bank, N.A. v. Szajna*, 898 N.Y.S.2d 524 (N.Y. App. Div. 2010); *Kandov v. Gondal*, 783 N.Y.S.2d 57, 57–58 (N.Y. App. Div. 2004); *Hickman v. Beretta*, 64 N.Y.S.3d 873, 876 (N.Y. Sup. Ct. 2017).

Defendants have failed to appear or otherwise defend in this action, and, upon plaintiff's application, ECF No. 8, the Clerk of Court noted their default pursuant to Fed. R. Civ. P. 55(a) on July 24, 2019, ECF No. 9. On August 2, 2019, J & J moved pursuant to Fed. R. Civ. P. 55(b) for a default judgment and damages for its claim under 47 U.S.C. § 605, but not for its claim under 47 U.S.C. § 553. Pl.'s Appl. Default J., at 3, ECF No. 10; Pl.'s Mem. Supp. Appl. Default J., at 4, 11, ECF No. 10-1.

## DISCUSSION

Because "default has been entered, the allegations of the Complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages." *J&J Sports Prods. Inc. v. Tequilitas 2, Inc.*, 2019 WL 919551, at *1 (E.D.N.Y. Feb. 25, 2019); *see Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "[A]ll reasonable inferences" must be drawn in the plaintiff's favor. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *J & J Sports Prods., Inc. v. Tellez*, 2011 WL 6371521, at *1 (E.D.N.Y. Dec. 20, 2011); *see Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court . . . need not agree that the alleged facts constitute a valid cause of action . . . .").

Under 47 U.S.C. § 605(a), "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." The Second Circuit has interpreted this prohibition to cover the interception of cable communications that originated as satellite or other radio communications. *See Int'l Cablevision, Inc. v. Sykes ("Sykes II")*, 75 F.3d 123, 131 n. 5, 133 (2d Cir. 1996); *Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002) (following *Sykes II*); *see also DIRECTV Inc. v. Rodriguez*, 2007 WL 1834676, at *1 (E.D.N.Y. June 26, 2007) ("[R]adio communications . . . includes satellite signals." (citing *Int'l Cablevision, Inc. v. Sykes ("Sykes I")*, 997 F.2d 998, 1008 (2d Cir. 1993)). Thus, in this circuit, "a plaintiff need not allege *how* the defendant actually received the signal," but only that the intercepted communication "originated via satellite" or other radio communication. *J & J Sports Prods., Inc. v. Abdelraouf*, 2019 WL 457719, at *3 (E.D.N.Y. Feb. 5, 2019); *see also Sykes II*, 75 F.3d at 131–33; *Joe Hand Promotions, Inc. v. Terranova*, 2014 WL 1028943, at *4 (E.D.N.Y. Mar. 14, 2014).

### A. Ranchito's Liability

J & J has pled factual allegations that adequately establish Ranchito's violation of Section 605(a). According to the Complaint, J & J held exclusive distribution rights for the Program, Compl. ¶¶ 19, 21; the Program "originated via a satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal," *id.* ¶ 24; the transmission was "scrambled" such that "[i]n order for the signal to be received and telecast clearly, it had to be decoded with electronic decoding equipment," which was provided to establishments authorized by J & J to receive the Program, *id.* ¶¶ 24, 25; on September 17, 2016, "without the authorization or approval" of J & J, Ranchito "broadcast the Program on two (2) television screens," thereby divulging and publishing the Program "to patrons within Tu Ranchito Restaurant," *id.* ¶¶ 26, 30,

31. "Given the defendants' default and the resulting duty of this Court to take all of the plaintiff's well-pleaded allegations as true," *Tellez*, 2011 WL 6371521, at *3, J & J has adequately demonstrated that Ranchito violated 47 U.S.C. § 605(a). *See id.*; *see also Abdelraouf*, 2019 WL 457719, at *3.

### B.     *Enriquez's Liability*

J & J's factual allegations also adequately establish that Enriquez is liable in his individual capacity. When a corporation violates Section 605(a), establishing individual liability "requires a showing either of contributory infringement . . . or vicarious liability." *Tellez*, 2011 WL 6371521, at *3 (quotation marks omitted).

### 1.     <u>Contributory Infringement</u>

An individual defendant is liable for contributory infringement when he or she authorizes an infringement. *See id.*; *see also EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99–100 (2d Cir. 2016) ("A contributory infringer is one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." (quotation marks omitted)).

Here, the well-pled factual allegations in the Complaint give rise to a reasonable inference that Enriquez authorized the interception and exhibition of the Program. J & J alleges that "[a]t all times relevant hereto, Defendant Marcelino Enriquez was the sole individual identified on the On Premises Liquor License (License Serial No. 1255645) issued to Tu Ranchito Restaurant Corp. for . . . Tu Ranchito Restaurant . . . ." Compl. ¶ 11. J & J further alleges, upon information and belief, that, on September 17, 2016, "Enriquez specifically directed the employees of Tu Ranchito Restaurant to unlawfully intercept, receive and broadcast Plaintiff's Program at Tu Ranchito

Restaurant or intentionally intercepted, and/or published the Program at Tu Ranchito Restaurant himself." *Id.* ¶ 14.

J & J was entitled to base this latter allegation on information and belief. "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quotation marks and citations omitted). The details of who physically operated the equipment to put the Program on the restaurant's TV screens, and at whose behest, would be facts "peculiarly within the possession and control of the defendant." *Id.*; *cf. Joe Hand Promotions*, 2014 WL 1028943, at *4 ("As the defendants' default has deprived the plaintiff of the opportunity to discover the specific surreptitious method the defendants used to intercept the broadcast, the allegations are sufficient to establish that the signal was intercepted by the defendants without authorization from the plaintiff."). Moreover, J & J's belief that Enriquez either did it himself or directed the restaurant's employees to do it is supported by some factual information: the liquor license specifically identified in the Complaint that lists Enriquez, and no other person, as the restaurant's "Principal" (Compl. ¶ 10; N.Y. STATE LIQUOR AUTH., https://sla.ny.gov/public-license-query (follow "Search by License Number" hyperlink; then search "1255645") (last visited Oct. 7, 2019)); and the fact that two televisions in the restaurant were showing the program on the night that it was aired (Compl. ¶¶ 26, 41; Aff. Steven Aimetti, Ex. 5 of Decl. Pl.'s Counsel Supp. Appl. Default J., ECF. No. 10-3).

J & J's allegation that Enriquez either specifically directed the restaurant's employees to commit the violation or carried it out himself is also not conclusory.  Reading the complaint as a

whole, as is required, *see Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 360 (2d Cir. 2013), J & J alleges that, on the night of September 17, 2016, Enriquez intercepted the coded transmission of the Program and showed it to patrons of Tu Ranchito restaurant on two TV screens—either by himself or by directing the restaurant's employees to do it. Compl. ¶¶ 14, 19, 24, 26, 30. This amounts to more than "legal conclusions" or a "formulaic recitation of the elements" of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 679–81 (2009). Instead, it is "factual content" that when "accepted as true," "allows the court to draw the reasonable inference" that Enriquez authorized the infringement. *Id.* at 678; *see also BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 356–57 (S.D.N.Y. 2014). Thus, J & J has adequately alleged contributory infringement by Enriquez.

### 2. Vicarious Liability

An individual defendant is vicariously liable for an infringement when the individual "had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." *Tellez*, 2011 WL 6371521, at *3 (alteration in original); *EMI*, 844 F.3d at 99.

The factual allegations discussed in the previous section of this opinion—together with the allegation that Enriquez had the "right and ability to supervise the activities of Tu Ranchito Restaurant" on the night of the telecast, Compl. ¶ 12—suffice to demonstrate that Enriquez had the right and ability to supervise the infringing activities. Thus, the remaining issue is whether J & J has sufficiently pled that Enriquez had an "obvious and direct financial interest" in those activities. *EMI*, 844 F.3d at 99.

In *EMI*, the Second Circuit held that the bar is not high for financial interests to qualify as "obvious and direct." *See id.* at 99. There, an individual defendant, who "was the near-exclusive

funder" of an LLC, was found vicariously liable for copyright infringement "that drew subscribers" to the LLC's website. *Id.* The Court held that the district court had not erred in instructing the jury that an "obvious and direct financial interest . . . may be established where infringing material acts as a 'draw' to attract subscribers to a defendant's business, *even if it is not the primary, or even a significant draw*." *Id.* (ellipsis in original) (emphasis added). The Court held that there was "ample evidence" to support a finding of the required financial interest, citing evidence that the LLC's employees "emphasized the availability" of the infringing material "in connection with trying to get users to" make purchases, and that, using the infringing material, the defendant "sought to . . . attract free users . . . whom [the LLC] could thereafter 'upsell.'" *Id.* The Court did not cite evidence establishing the actual results of those efforts. Thus, under *EMI*, business owners generally have an obvious and direct financial interest in infringing activities done to attract customers to their businesses.

Here, the factual allegations in the Complaint imply Enriquez's obvious and direct financial interest in the alleged violation. In addition to the allegations described above, J & J alleges "the sale of alcoholic beverages during the broadcast." Compl. ¶ 33; *see also id.* ¶ 27; Aff. Steven Aimetti (reporting the purchase of a Corona from the restaurant during the Program). J & J also alleges that "[t]he commercial fee for an establishment the size of Tu Ranchito Restaurant to broadcast the Program lawfully was $1,800.00 [and] [n]either [Enriquez] nor [Ranchito] paid such a fee to Plaintiff." Compl. ¶ 28. Assuming it is true that Enriquez was the principal of the restaurant, and that he—either personally or through his subordinates—unlawfully showed a telecast priced at $1,800 on two TV screens to patrons who were making purchases at the restaurant, it can reasonably be inferred that he did it to attract patrons to the restaurant (or get them to stay longer) in order to increase the restaurant's sales, and thus his own income.

Thus, especially in light of the Second Circuit's holding in *EMI*, J & J has sufficiently alleged Enriquez's obvious and direct financial interest in the alleged infringement, and has thus stated a claim against him based on vicarious liability. *See J & J Sports Prod., Inc. v. McAdam*, 2015 WL 8483362, at *3 (E.D.N.Y. Dec. 9, 2015) (holding that vicarious liability was well-pled by similar allegations and citing other cases that did the same); *J & J Sports Prods., Inc. v. 1400 Forest Ave Rest. Corp.*, 2014 WL 4467774, at *6 (E.D.N.Y. Sept. 9, 2014) (same).

## CONCLUSION

Because the alleged facts constitute legally valid causes of action under 47 U.S.C. § 605 against both Tu Ranchito Restaurant Corp. and Marcelino Enriquez, J & J's motion for default judgment against both defendants is GRANTED to that extent.

The case is referred to United States Magistrate Judge Cheryl L. Pollak for further proceedings to determine and recommend the amount of damages.

Counsel for plaintiff is ORDERED to serve a copy of this Order on defendants and file an affidavit of service with the Court.

**SO ORDERED**.

*Edward R. Korman*

Brooklyn, New York
October 7, 2019

Edward R. Korman
United States District Judge