UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,

                Plaintiff,

      - against -

MARCELINO ENRIQUEZ, individually and
d/b/a Tu Ranchito Restaurant; and TU
RANCHITO RESTAURANT CORP., an
Unknown business entity d/b/a Tu Ranchito
Restaurant,
                Defendants.
------------------------------------------------------X

**REPORT AND RECOMMENDATION**
19 CV 2384 (EK)(CLP)

**POLLAK**, Chief United States Magistrate Judge:

On April 24, 2019, J & J Sports Productions, Inc. ("plaintiff" or "J&J") commenced this action against Marcelino Enriquez, individually and d/b/a Tu Ranchito Restaurant, and Tu Ranchito Restaurant Corp. ("Ranchito"), alleging violations of 47 U.S.C. §§ 605 and 553. Upon the failure of defendants to answer or respond to the Complaint, the Clerk of Court entered a default against the defendants on July 24, 2019. The plaintiff moved for default judgment on August 2, 2019, and the action was subsequently referred to the undersigned by the Honorable Edward R. Korman to conduct an inquest and prepare a Report and Recommendation.[1]

For the following reasons, this Court respectfully recommends that, pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii), and 605(e)(3)(B)(iii), plaintiff be awarded damages of $5,400.00 from the corporate defendant, Tu Ranchito Restaurant Corp., and the individual defendant Marcelino Enriquez, who has been found to be vicariously liable.

---

[1] Following Judge Korman's referral to the undersigned, the case was re-assigned to Judge Eric R. Komitee on February 7, 2020.

FACTUAL BACKGROUND

In the Complaint, plaintiff alleges that, pursuant to a closed-circuit television licensing agreement with Golden Boy Promotions, LLC, plaintiff was granted the exclusive rights to commercially distribute the September 17, 2016 WBO World Super Welterweight Championship Fight Program between Saul Alvarez and Liam Smith, including all undercard bouts and fight commentary encompassed in the television broadcast of the event (the "Program"), at closed-circuit locations such as theaters, arenas, bars, clubs, lounges, and restaurants throughout New York.  (Compl.[2] ¶ 19; Pl.'s Mem.[3] at 1-2; Gagliardi Aff.[4] ¶ 3). These closed-circuit locations could only obtain access to the broadcast by entering into a contractual relationship with plaintiff.  (Compl. ¶ 21; Pl.'s Mem. at 1-2; Gagliardi Aff. ¶ 3).

Plaintiff alleges that Ranchito is a commercial establishment operating at 635 Bay Street, Staten Island, N.Y.  (Compl. ¶ 8; Pl.'s Mem. at 2).  Defendant Marcelino Enriquez is alleged to be a principal of Ranchito, and the sole individual identified on the On Premises Liquor License issued to Ranchito. (Compl. ¶¶ 9-11).

On September 17, 2016, at approximately 10:05 p.m., Steven Aimetti, an investigator with Omni Present Investigations, entered Tu Ranchito, where he observed the Program being broadcast to patrons of the defendant establishment.  (Aimetti Aff.[5] at 1).  Aimetti was not required to pay a cover charge to enter the establishment.  (Id.)  Inside, he observed two

---

[2] Citations to "Compl." refer to plaintiff's Complaint, filed April 24, 2019, ECF No. 1.
[3] Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum in Support of Application For Default Judgment, dated August 2, 2019, ECF No. 10.
[4] Citations to "Gagliardi Aff." refer to the Affidavit of Joseph Gagliardi, President of J&J Sports Productions, Inc., filed on August 2, 2019, ECF No. 10.
[5] Citations to "Aimetti Aff." refer to the Affidavit of Steven Aimetti, Investigator for Plaintiff, dated September 16, 2015, and submitted as Exhibit 5 to the Declaration of Plaintiff's Counsel Joseph P. Loughlin in Support of Application for Default Judgment ("Loughlin Aff."), dated August 2, 2019.

television sets and between 36 and 40 patrons on the premises at the time of the broadcast. (Id. at 2). He represents that upon his arrival at 10:05 p.m., he observed the Program, in the sixth round of the match between Joseph Diaz, in light gray shorts, and Andrew Cancio, in black/white trunks. (Id. at 1).

Plaintiff asserts that defendants were not authorized to display the Program and that showing the Program was a violation of federal law. (Compl. ¶¶ 16, 30-33, 41-42; Gagliardi Aff. ¶¶ 3, 7). Plaintiff further asserts that the Program could not be intercepted "mistakenly, innocently, or accidentally," and has detailed several ways in which the Program could be illegally intercepted. (Gagliardi Aff. ¶¶ 9, 10(A-E)).

On April 24, 2019, plaintiff commenced this action, seeking statutory damages pursuant to 47 U.S.C. §§ 553 and 605. Plaintiff served copies of the Summons and Complaint upon the defendants by personal service on Ranchito, in compliance with Fed. R. Civ. P. 4(e)(1), and on the individual defendant Enriquez, pursuant to N.Y. C.P.L.R. 308(4). (Mem. and Order[6] at 1-2). None of the defendants have filed an answer or appeared in this action.

On October 7, 2019, the Honorable Edward R. Korman, United States District Judge, issued a Memorandum and Order in this matter, holding: 1) that service on both defendants was proper; 2) finding that plaintiff had adequately pleaded the elements necessary to find defendant Ranchito liable for a violation of Section 605; 3) finding that plaintiff had also adequately pleaded contributory infringement and vicarious liability against Enriquez in his individual capacity. (Mem. and Order at 1-8). Having determined that the allegations stated legally valid causes of action under 47 U.S.C. § 605 against both defendants, the court granted plaintiff's

---

[6] Citations to "Mem. and Order" refer to the Memorandum and Order issued by the Honorable Edward R. Korman, dated October 7, 2019, granting default judgment against Ranchito and Enriquez.

motion for default judgment and referred the matter to the undersigned to determine and recommend an appropriate award of damages. (Id. at 8).

## DISCUSSION

A. Default Damages

After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(a). When a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); see also Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. April 21, 1992) (gathering cases). For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). If the amount of damages must be ascertained in order for a default judgment to be entered, the Court may conduct a hearing. See Fed. R. Civ. P. 55(b)(2); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95.

Plaintiff requests an award of $21,600.00 for defendants' violation of 47 U.S.C. §§ 605(c)(3)(C)(i)(II) and 605(e)(3)(C)(ii). (Pl.'s App. for Def. J.[7]; Pl.'s Prop. Def. J.[8]; Pl.'s Mem. at 5). Specifically, plaintiff seeks an award of $5,400.00 in statutory damages and $16,200.00 in enhanced statutory damages. (Pl.'s Mem. at 5). Plaintiff also requests pre- and post-judgment

---

[7] Citations to "Pl.'s App. for Def. J." refers to the Application for Default Judgment submitted by the plaintiff on August 2, 2019, ECF No. 10.

[8] Citations to "Pl.'s Prop. Def. J." refers to the proposed Default Judgment submitted with plaintiff's motion.

4

interest. (Pl.'s Prop. Def. J.). Additionally, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), plaintiff is entitled to costs and attorneys' fees. Plaintiff seeks to have 30 days to submit its request for the pre- and post-judgment interest along with the attorneys' fees and relevant costs. (Id.).

  B. Damages

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. The burden is on the plaintiff to establish its entitlement to recovery "in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. While "the court must ensure that there is a basis for the damages specified in the default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. Oct. 20, 1988), aff'd, 873 F.2d 38 (2d Cir. 1989). Here, the Court has reviewed plaintiff's affidavits and exhibits pertaining to the damages incurred and makes the following recommendation.

  1. Statutory Damages

Where, as here, a violation of Section 605 has occurred, plaintiff is entitled to elect statutory or actual damages. 47 U.S.C. § 605(e)(3)(C)(i). In this instance, plaintiff has elected to recover statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). (Pl.'s Mem. at 4; see Gagliardi Aff. ¶ 14).

Section 605 provides for penalties "for each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II) (emphasis added). Although Section 605 requires the court to assess damages based on each "violation" of the statute, there is no statutory definition of "violation." See Garden City Boxing Club, Inc. v. Rosado, No. 05 CV 1037, 2005 WL 3018704, at *3

(E.D.N.Y. Oct. 6, 2005). Moreover, in cases such as this, involving the theft of services by a commercial establishment, it is often difficult to assess a precise figure. However, most cases applying this statute in a commercial context have interpreted the showing of a single event on a single night as one violation. See, e.g., id.; Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. July 8, 1997).

In determining the amount of damages that may be imposed for each violation within the range of $1,000 to $10,000 per violation, Section 605 leaves the decision within the sound discretion of the court. See 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. Nov. 10, 1993) (reducing an award from $250,000 to $10,000 for commercial broadcast of a boxing match); Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. at 111 (citing cases). The factors to be considered in determining the appropriate amount of damages include the "'pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose.'" Cablevision Sys. Corp. v. De Palma, No. 87 CV 3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (interpreting 47 U.S.C. § 553)); see also J & J Sports Productions, Inc. v. Mangos Steakhouse & Bakery, No. 13 CV 5068, 2014 WL 2879868, at *6 (E.D.N.Y. May 7, 2014); Entertainment by J & J, Inc. v. Ramsarran, No. 01 CV 5223, 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002).

In calculating lost profits, some courts have awarded a flat damage amount when considering the unauthorized receipt and broadcast of a cable program by a commercial establishment. See, e.g., Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02 CV 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003) (awarding statutory minimum where plaintiff failed

to establish any actual damages because plaintiff did not submit evidence of the cost of the license fee for defendants to broadcast the boxing event legally); Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) (awarding flat damage amount "based on the Court's view of the equities and not the estimate of the number of patrons"); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. at 484 (awarding statutory damages of $10,000 where it found the statutory maximum of $250,000 to be excessive).

Other courts have assessed damages based on the number of patrons in the commercial establishment during the broadcast. See, e.g., Garden City Boxing Club v. Rosado, 2005 WL 3018704, at *3-4 (multiplying the number of patrons present at the unauthorized broadcast by the residential charge for the pay-per-view event being shown, $54.95); Top Rank Inc. v. Tacos Mexicanos, No. 01 CV 5977, 2003 WL 21143072, at *4-5 (E.D.N.Y. Mar. 28, 2003) (awarding $50 per patron); Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01 CV 3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (same); Time Warner Cable of New York City v. Googies Luncheonette, Inc. ("Googies"), 77 F. Supp. 2d 485, 489-90 (S.D.N.Y. Dec. 21, 1999) (same); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111 (same); Cablevision Sys. Corp. v. 45 Midland Enters., Inc., 858 F. Supp. 42, 45 (S.D.N.Y. July 25, 1994) (same).

In this case, plaintiff contends that the cost for an establishment to broadcast the Program lawfully was $1,800.00, which is the amount that plaintiff would have received had defendants entered into a contract with plaintiff to broadcast the Program. (Pl.'s Mem. at 8; Gagliardi Aff. ¶ 8, Ex. 2). Apart from the actual damages that plaintiff has calculated, plaintiff asserts more specifically that signal piracy causes a reduction in its lawful business because of the "perceived

7

lack of significant consequences" for such behavior. (Gagliardi Aff. ¶ 13). Plaintiff claims its business suffers as a result of signal piracy costing the company, its customers, and their communities. (Gagliardi Aff. ¶ 13). Further, plaintiff argues there is a "reasonable presumption" that defendants obtained additional profits as a result of the illegal showing of the Program. (Pl.'s Mem. at 8).

Plaintiff requests statutory damages of $5,400, representing three times the amount that defendants would have paid for authorization to broadcast the Program lawfully. (See Pl.'s Mem. at 8). Plaintiff contends that neither of the two typical methods of calculating damages should be used in this case, and that the Court should instead award a higher amount, because such award failed to compensate plaintiff adequately and would create a "perverse incentive for an individual to attempt to break the law." (Id. at 8-9).

2. Application

Where there is uncontradicted evidence of the number of patrons viewing an unauthorized program in an establishment, some courts have calculated the award of damages by multiplying the individual residential rate to receive the transmission by the number of patrons present, and adding to this any other cover charges and profits that can be attributed to the unauthorized viewing. J & J Sports Prods., Inc. v. LDG Williams, LLC, No. 11 CV 2145, 2011 WL 5402031, at *3 (E.D.N.Y. Jul. 27, 2018); see also J & J Sports Prods., Inc. v. Arhin, No. 07 CV 2875, 2009 WL 1044500, at *1 (E.D.N.Y. April 17, 2009). However, that amount fails to approach the actual lost revenues to plaintiff. Plaintiff has stated that lost revenues in this case equal $1,800.00, based on the fee that would normally be charged to a commercial establishment with a capacity of 1-100 persons. (Pl.'s Mem. at 8).

8

Awarding the plaintiff $1,800.00 in lost revenues constitutes an award greater than the statutory minimum of $1,000. See 47 U.S.C. § 605(e)(3)(C)(ii); Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp. 2d 59, 63-64 (E.D.N.Y. April 13, 2006) (awarding $1,000 where multiplying the number of patrons by $50 would lead to a total less than the statutory minimum); see also J & J Sports Prods., Inc. v. LGD Williams, LLC, 2011 WL 5402031, at *4 (explaining that "courts use per-patron calculations as a 'starting point' for calculating damages . . . rather than as an exhaustive analysis where the sum of per-patron damages is less than the fee that an establishment would have paid for a sublicense to broadcast the event") (citations omitted). Here, where there has been no evidence of repeat violations, and no evidence that the defendants exhibited the match for commercial gain, the Court finds that an award of $1,800.00 constitutes "sufficient deterrence," and thus, the Court respectfully recommends that plaintiff be awarded $1,800.00 in statutory damages.

Other courts in this district have calculated damages by multiplying the residential rate by the number of patrons present, and then adding that amount to the licensing fee. See, e.g., J & J Sports Prods., Inc. v. The Afrikan Poetry Theatre, Inc., No. 17 CV 2196, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018). However, the plaintiff did not provide the court with the residential rate in this case, asserting that "as this is a default case, Plaintiff cannot calculate the profits for the Defendant." (Pl.'s Mem. at 8). See Joe Hand Promotions, Inc. v. Benitez, No. 18 CV 6476, 2020 WL 5519200, at *5 (E.D.N.Y. Aug. 27, 2020) ("Where the plaintiff has 'failed to provide any evidence of the per-person residential fee,' 'the flat-fee method is appropriate'") (citations omitted).

In this case, plaintiff asked the court not to use either of the approaches discussed above, but rather to award statutory damages based on three times the licensing fee. Plaintiff cites a

9

variety of cases outside this district and circuit where courts have used this method. See, e.g., J & J Sports Prods., Inc. v. Tonita Rest., LLC, No. 13 CV 0382, 2015 WL 9462975 (E.D. Ky. Dec. 28, 2015); Joe Hand Promotions, Inc. v. Sheedy, No. 08 CV 1797, 2011 WL 4089534 (D. S.C. July 29, 2011). As plaintiff noted, previous approaches by courts in the Second Circuit would award statutory damages equivalent to the sublicensing fee. (Pl.'s Mem. at 8) (see discussion supra at 16-17). Although the Court has reviewed the out-of-circuit cases cited by plaintiff, the Court respectfully recommends applying the methodology typically used to calculate statutory damages in the Second Circuit, which would result in an award of $1,800.00 in statutory damages. See, e.g., J&J Sports Productions Inc. v. Vasquez, No. 19 CV 8440, 2020 WL 3170588, at *1 (S.D.N.Y. June 15, 2020) ("Had Defendants entered a sublicense with Plaintiff, the fee would have been $1800. Because the record does not indicate what the at-home rate would have been, it is not possible to calculate whether damages based on that amount would be greater. Plaintiff requests $5400 in statutory damages, citing judgments from district courts in other circuits that have applied multipliers to the license fee. The Court declines to adopt that approach. Consistent with the practice of other district courts in the Second Circuit, the Court orders $1800 in statutory damages.").

### 3. Enhanced Damages for Willfulness

Plaintiff also seeks enhanced statutory damages pursuant to Sections 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii), providing for additional awards of up to a maximum of $100,000.00 for all willful violations. (Pl.'s Mem. at 5, 9-10). The statute permits enhanced damages where the violation was committed willfully and for purposes of private financial gain. See, e.g., Entertainment by J & J, Inc. v. Ramsarran, 2002 WL 720480, at *2 (awarding statutory damages of $5,000, increased by $10,000 for willfulness under 47 U.S.C. § 605(e)(3)(C)(ii), where

defendant displayed a boxing match to eighteen patrons in his bar); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111-12 (awarding statutory damages of $3,750, increased by $5,000 for willfulness under section 605(e)(3)(C)(ii), where defendant displayed a boxing match to seventy-five people inside and twenty people outside his restaurant). This section clearly applies to persons or entities that operate commercial establishments such as bars, taverns, and restaurants that exhibit unauthorized programming to their patrons. See id.

In determining whether an enhanced award for willful conduct is warranted, some precedents suggest that the simple fact the Program was intercepted and broadcast without permission is an indication of willfulness. See, e.g., J & J Sports Prods., Inc. v. Big Daddy's Theme Palace, No. 14 CV 2765, 2015 WL 58606, at *4 (E.D.N.Y. Jan. 5, 2015); J & J Sports Prods., Inc. v. Nest Restaurant & Bar, Inc., No. 17 CV 2194, 2018 WL 4921657, at *8 (E.D.N.Y. July 17, 2018). Willful behavior under the statute has been interpreted to include "'disregard for the governing statute and an indifference for its requirements.'" ON/TV of Chicago v. Julien, 763 F.2d 839, 844 (7th Cir. 1985) (quoting TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)). Courts also consider five factors to determine whether willful conduct warrants an award of enhanced damages: "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." See J & J Sports Prod., Inc. v. LX Food Grocery Inc., No. 15 CV 6505, 2016 WL 6905946, at *5 (E.D.N.Y. Nov. 23, 2016) (citations and internal quotation marks omitted).

In determining the enhanced damages for willful conduct, courts take varying approaches. Some courts have awarded treble damages for willful violations. See, e.g., J & J

Sports Prods., Inc. v. Hot Shots, Inc., No. 09 CV 1884, 2010 WL 3522809, at *3 (E.D.N.Y. Apr. 27, 2010) (awarding plaintiff an enhancement of three times the statutory damages award of $2,747.50, or $8,242.50, for willfulness, for a total award of $10,990); J & J Sports Productions, Inc. v. Benson, No. 06 CV 1119, 2007 WL 951872, at *5 (E.D.N.Y. March 27, 2007) (awarding statutory damages of $1,200, plus enhanced damages of $3,600, for a total of $4,800 where plaintiff did not advertise the event, charged no cover, and five patrons were present); J & J Sports Prods., Inc. v. Forbes, No. 07 CV 4394, 2008 WL 5263732, at *1 (E.D.N.Y. Dec. 17, 2008) (awarding $1,000 in statutory damages and $3,000 in enhanced statutory damages for willfulness, for a total of $4,000.00); J & J Sports Prods., Inc. v. Drake, No. 06 CV 246, 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006) (same).

Other courts have doubled the statutory damage award to arrive at enhanced damages. See, e.g., J & J Sports Prods., Inc. v. Onyx Dreams, Inc., No. 12 CV 5355, 2013 WL 6192546, at *6-7 (E.D.N.Y. Nov. 26, 2013) (awarding enhanced damages of $9,011.80, or two times the statutory damages of $4,505.90, for a total of $13,517.70, where plaintiff was not paid a licensing fee and defendant charged a cover fee of $20); Joe Hand Promotions, Inc. v. Elmore, No. 11 CV 3761, 2013 WL 2352855, at *8 (E.D.N.Y. May 29, 2013) (awarding $1,538.60 in statutory damages plus two times that, $3,077.20 in enhanced damages, for a total award of $4,615.80); Garden City Boxing Club, Inc. v. 135 Hunt Station Billiard, Inc., No. 07 CV 3849, 2012 WL 4328355, at *5 (E.D.N.Y. June 21, 2012) (awarding $4,396.00 in enhanced damages, plus statutory damages of $2,198.00, where violations were willful but there was no evidence of past or future violations), report and recommendation adopted, 2012 WL 4328347 (E.D.N.Y. Sept. 19, 2012); J & J Sports Prods., Inc. v. Tellez, 2011 WL 6371521, at *6 (E.D.N.Y. Dec. 20, 2011) (awarding $4,670.75 in statutory damages plus two times that amount or $9,341.50,

representing enhanced damages where plaintiff showed no evidence of prior violations and where the revenues defendant earned were unclear).

Still other courts have awarded enhanced damages in an amount equal to that awarded for statutory damages. See, e.g., J & J Sports Prods. Inc. v. Orellana, 2019 WL 1177719, at *7 (awarding statutory damages of $3,000 and enhanced damages of $3,000); J & J Sports Prods. Inc. v. Johnny's Restaurant, Bar & Lounge Inc., 2016 WL 8254906, at *7 (E.D.N.Y. Dec. 15, 2016) (awarding damages of $3,297 and enhanced damages of $3,297); J & J Sports Prods., Inc. v. LDG Williams, LLC, 2011 WL 5402031, at *1 (awarding statutory damages of $2,534.15 and enhanced damages of $2,534.15 for willfulness); Entertainment by J & J, Inc. v. Friends II, Inc., No. 02 CV 585, 2003 WL 1990414, at *4 (S.D.N.Y. Apr. 25, 2003) (awarding statutory damages of $2,500 and enhanced damages of $2,500); Entertainment by J & J Inc. v. Nina's Rest. & Catering, No. 01 CV 5483, 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002) (same).

Finally, sometimes a court awards no enhancement. See, e.g., J & J Sports Prods., Inc. v. Martinez, No. 07 CV 3455, 2009 WL 1913239, at *2 (E.D.N.Y. June 30, 2009) (awarding $3,000 in statutory damages and zero enhanced damages for an establishment with 40 patrons where plaintiff failed to show "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [or] defendant's charging a cover charge or charging premiums for food and drinks" (internal quotation marks and citation omitted)); J & J Sports Prods., Inc. v. Monte Limar Sports Bar, 2017 WL 933079, at *5 (E.D.N.Y March 8, 2017) (awarding $2,200 in statutory damages and zero in enhanced damaged because, although there were 100 patrons present, the court found no evidence of significant profit or commercial advantage); J & J Sports Productions, Inc. v. LX Food Grocery, Inc., 2016 WL 6905946, at *5 (awarding $2,200 in

statutory damages and zero in enhanced damages where the auditor observed five patrons in the Establishment and the court found no evidence of commercial benefit); J&J Sports Prods., Inc. v. Louisias, No. 06 CV 339, 2006 WL 1662608, at *5-6 (E.D.N.Y. May 16, 2006) (awarding $2,500 statutory damages and zero enhanced damages for a barbershop in which five patrons were present because there was no evidence that defendants exhibited the Event for commercial advantage).

Plaintiff alleges that defendants intercepted and broadcasted the Program without entering into a licensing agreement with plaintiff or paying fees to plaintiff. To accomplish this, defendants could have utilized an unauthorized decoder, illegally transferred an authorized decoder to the location, illegally altered cable service to bring the signal to the defendant's establishment, or misrepresented the commercial establishment as a residential property to allow purchase of the Program at the residential price. (See Gagliardi Aff. ¶ 10). The defendants then broadcast the Program to their patrons.

While plaintiff's allegations support a finding that defendants' conduct was willful, and plaintiff has alleged that signal piracy has resulted in losses in revenue, plaintiff has failed to allege what those losses might be; it has also failed to show that the defendants exhibited the match for commercial gain. Even though there were 36-40 patrons present at the time the investigator viewed the Program, there was no evidence that a cover charge was collected. Nor has plaintiff alleged that the defendant has repeatedly violated the statute. (See Aimetti Aff.). According to Mr. Aimetti's Affidavit, however, he ordered a beer from the waitress while in the restaurant, indicating that defendants served food and beverages to the patrons watching the Event, thus profiting from their unlawful interception. (Id.) To the extent that defendants' failure to pay for a license constitutes "actual damages," that cost is already factored into

plaintiff's statutory damages award.  Given plaintiff's undisputed allegations in support of a finding that the defendants had to have acted willfully to intercept the Program, and plaintiff's evidence that the defendants were profiting from the sale of items to the patrons – a factor that warrants further enhancement – the Court respectfully recommends an additional award of $3,600.00 for the willfulness of this violation.

This amount is in line with previous awards made by courts in the Eastern and Southern Districts of New York.  See, e.g., Innovative Sports Management, Inc. v. Acevedo, No. 19 CV 1690, 2020 WL 5134423, at *6 (E.D.N.Y. June 4, 2020) (awarding two times the statutory damages award in enhanced damages); J&J Sports Productions, Inc. v. Espinal, No. 19 CV 5180, 2020 WL 2747981, at *5 (E.D.N.Y. May 26, 2020) (granting $1800 in statutory damages and $1800 in enhanced damages where there was evidence of six individuals in the deli); J&J Sports Productions Inc. v. Vasquez, 2020 WL 3170588, at *2 (granting $1800 in statutory damages and $5000 in enhanced damages where there was evidence of 13 people at the restaurant and no entry fee was charged).  Accordingly, the Court respectfully recommends that the district court approve the total recommended statutory damages of $5,400.00 as sufficient to compensate plaintiff and to deter future illegal conduct on the part of defendants.

4. Prejudgment Interest

Plaintiff also requests pre- and post-judgment interest.  (Pl.'s Prop. Def. J.).  Section 605 does not provide a statutory basis for an award of pre-judgment interest.  See Entertainment by J&J Inc. v. Miraldo Rest., Inc., No. 01 CV 10832, 2003 U.S. Dist. LEXIS 11361, at *16 (S.D.N.Y. Apr. 23, 2003), report and recommendation adopted, 2003 U.S. Dist. LEXIS 9624, at *4-5 (S.D.N.Y. June 10, 2003); see also DIRECTV, Inc. v. Montes, 338 F. Supp. 2d 352, 356 (D. Conn. Sept. 27, 2004); DIRECTV, Inc. v. Getchel, No. 3:03 CV 2073, 2004 WL 1202717, at *4

(D. Conn. May 26, 2004). The district court may nevertheless choose to award pre-judgment interest. See Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc., 67 F.3d 1063, 1071 (2d Cir. 1995) (holding that "[t]he decision whether to grant prejudgment interest and the rate used if such interest is granted 'are matters confided to the district court's broad discretion'") (citation omitted). "The Second Circuit has recognized that pre-judgment interest may be permitted in the absence of express statutory authorization 'when the awards were fair, equitable and necessary to compensate the wronged party fully.'" Garden City Boxing Club, Inc. v. Rojas, No. 05 CV 1047, 2006 WL 3388654, at *9 (E.D.N.Y. Nov. 21, 2006) (quoting Wickham Contracting Co., Inc. v. Local Union No. 3, 955 F.2d 831, 836 (2d Cir. 1992)).

However, pre-judgment interest is generally awarded only in "exceptional cases." Am. Honda Motor Co., Inc. v. Two Wheel Corp., 918 F.2d 1060, 1064 (2d Cir. 1990) (internal quotation marks and citation omitted). Plaintiff has not provided any reason for awarding pre-judgment interest under the circumstances, but has requested an opportunity to submit additional support within 30 days of any Order approving the Report and Recommendation. Plaintiff is directed to include in any application a showing that there are exceptional circumstances in this case that warrant the award for pre-judgment interest.

C.  Plaintiff's Attorneys' Fees and Costs

Pursuant to Section 605(e)(3)(B)(iii), plaintiff is also entitled to costs and reasonable attorneys' fees. See 47 U.S.C. § 605(e)(3)(B)(iii) (stating that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails"); see also Int'l Cablevision v. Sykes, 997 F.2d at 1009. Plaintiff requests "that it be granted 30 days from the date the judgment becomes final to submit its Motion for costs and attorneys' fees." (Pl.'s Mem. at 10). This practice of submitting a motion for fees and costs following the

16

order of the district court has been accepted in this district.  See J & J Sports Productions, Inc. v. Reynolds, No. 18 CV 2540, 2019 WL 1299408, (E.D.N.Y. Jan. 11, 2019), report and recommendation adopted, 2019 WL 1299665 (E.D.N.Y. Mar. 21, 2019) (recommending that plaintiff be permitted to file a separate motion with attorneys' fees and costs within 30 days after the district judge's order on the report and recommendation); J & J Sports Productions, Inc. v. Guncay, No. 18 CV 2097, 2018 WL 6313210, at *5 (E.D.N.Y. Oct. 17, 2018), report and recommendation adopted, 2018 WL 6308773 (Dec. 3, 2018) (same); J & J Sports Productions, Inc. v. Brown, No. 18 CV 2489, 2019 WL 612225 (E.D.N.Y. Jan. 10, 2019), report and recommendation adopted, 2019 WL 591544 (E.D.N.Y. Feb. 13, 2019) (same).

The Court therefore respectfully recommends that plaintiff be permitted to submit a motion for attorneys' fees, including an affidavit and contemporaneous time records establishing the amount of attorneys' fees and costs it seeks to recover, 30 days from the date this Report and Recommendation is ruled upon.  See J & J Sports Productions, Inc. v. Alvarez, No. 07 CV 8852, 2009 WL 3096074, at *7 (S.D.N.Y. Sept. 25, 2009) (declining to award plaintiff attorney's fees because of the failure to keep contemporaneous time records).

## CONCLUSION

Accordingly, this Court respectfully recommends that plaintiff be awarded $5,400.00 in statutory and enhanced damages from defendants and that plaintiff be permitted to submit a motion for attorneys' fees 30 days from the date this Report and Recommendation is ruled upon.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's

order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onandaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated:  Brooklyn, New York
October 9, 2020

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York